CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 23 2010

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAY E. JOHNSON, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 7:09CV00504 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| TERRY O'BRIEN, WARDEN, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Respondent. | ) |

Jay E. Johnson, a military prisoner proceeding pro se, filed this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The action is presently before the court on the respondent's motion to dismiss. For the reasons that follow, the court will grant the respondent's motion.

## Background

Johnson is a former active duty member of the United States Air Force. On February 24, 1986, a general court-martial convicted Johnson of premeditated murder, possession of a controlled substance, and possession of drug paraphernalia. Johnson was dishonorably discharged from the Air Force and sentenced to a life term of confinement.

Johnson's convictions arose from events that occurred on August 1, 1985. The relevant facts are as follows:

> On 1 August 1985 at approximately 2050 hours in Frankfurt Germany Inmate Johnson and his wife approached a Pakistani male in reference to buying hashish. The Pakistani took them in his car to meet another Pakistani (the victim) who supposedly could sell them hashish. Inmate Johnson met with the victim, discussed the drug purchase and they continued driving to another location. They drove to an area near a railway station where the victim told the Pakistani driver to stop so he could call a taxi. The victim got out of the car and went toward a phone booth. Inmate Johnson's wife moved to the

front passenger seat of the car. After waiting for approximately 15 minutes
a taxi arrived and parked in front of them. The victim returned to the car
where Inmate Johnson was waiting. Inmate Johnson's wife got out of the car
as the victim approached and leaned into the front passenger side of the car.
According to the Pakistani driver the victim said to Inmate Johnson "Taxi
wait" and some other words were exchanged. [The] Pakistani driver then
heard a shot. Inmate Johnson jumped out of the car and ran off. The victim
died from a gunshot to the head from a Walther PPK 7.67 mm pistol. The
victim also had 9 grams of hashish in his possession. Inmate Johnson and his
wife were apprehended near the crime scene. Inmate Johnson's white shirt
had blood on it, a cut in the shirt and he had a knife in his possession. Inmate
Johnson's wife's clothing also had blood on it. During a search of Inmate
Johnson's quarters the following items were found: 1/2 to 1 gram of hashish,
drug scales, empty pistol holster, 2 rounds of ammunition.

(Respondent's Ex.7).

Johnson's convictions and sentence were affirmed by the United States Air Force Court of Military Review on October 22, 1986. Johnson then filed a petition for review with the United States Court of Military Appeals. That petition was denied on May 21, 1987.

Johnson was initially incarcerated at the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas.[1] In October of 1998, Johnson was transferred from the USDB to the federal prison system, pursuant to an agreement between the Department of the Army and the Federal

---

[1] The USDB is a maximum security correctional facility maintained by the Army Corrections System that "provides long-term incarceration for military prisoners for all services." Army Reg. 190-47 § 2-2. Air Force officers and cadets who have been sentenced to a term of imprisonment of more than seven years may be housed at the facility. See Air Force Instruction 31-205 ("Male inmates (officer, enlisted or cadet) under sentence of death or with a sentence of more than seven years, will serve their sentences at the USDB, Ft Leavenworth, KS, or as determined by the Director, Air Force Corrections.").

Bureau of Prisons (BOP).[2] He is currently incarcerated in this district at United States Penitentiary-Lee (USP-Lee) in Jonesville, Virginia.

As a result of being transferred to the federal prison system, Johnson's requests for parole are reviewed by United States Parole Commission (USPC), while the Air Force Clemency and Parole Board (AFC&PB) continues to consider his clemency petitions. See note 2, supra. Through annual clemency review by the AFC&PB, Johnson has had his term of confinement reduced from life in prison to a term of 93 years. His most recent request for clemency was denied by the AFC&PB on August 13, 2009.

Johnson received an initial parole hearing before a USPC hearing examiner on October 25, 1999.[3] The Parole Commission ultimately denied parole and continued Johnson to a 15-year reconsideration hearing in October of 2014. The notice of action issued to Johnson stated that

---

[2] As will be discussed, infra, the Uniform Code of Military Justice provides that "a sentence of confinement adjudged by a court martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States . . . ." 10 U.S.C. § 858(a). Pursuant to this authority, the Department of the Army and the BOP entered into a memorandum of agreement "establish[ing] the policies and procedures governing the transfer of military prisoners in the custody of [the] Department of the Army to the Federal Bureau of Prisons." (Respondent's Ex. 3 at pg. 1). Under this agreement, the BOP promised to house up to 500 military prisoners for the Army's convenience. The agreement provides that "[t]he Secretaries of the respective Services retain clemency authority for military prisoners in FBOP custody," but that "[p]arole approval for military prisoners in [the] custody of the FBOP rests with the U.S. Parole Commission." (Respondent's Ex. 3 at pg. 3).

[3] Following the initial parole hearing, the Parole Commission will either (1) set an effective date of parole; (2) set a presumptive release date, which is contingent on favorable findings at subsequent hearings; or (3) continue the prisoner to a 15-year reconsideration hearing pursuant to 28 U.S.C. § 2.14(c). See 28 C.F.R. § 2.12(b).

After the initial parole hearing, a federal prisoner is entitled to periodic interim hearings. 28 C.F.R. § 2.14. For prisoners like Johnson, who are subject to a maximum term of seven years or more, interim hearings are held every 24 months. See 28 C.F.R. § 2.14(a)(1)(ii). Depending on the evidence presented at the interim hearing, the Parole Commission may advance, delay, or rescind a presumptive parole date, or advance the date of the 15-year reconsideration hearing. See 28 C.F.R. § 2.14(a)(2).

guidelines established by the Commission indicated a range of 136+ months to be served before release, but that "a decision more than 48 months above the minimum guidelines [was] warranted because of the aggravated nature of [Johnson's] offense behavior." (Respondent's Ex. 21).

Following an interim hearing conducted in 2001, the USPC advanced the date of Johnson's reconsideration hearing to February 2014. Subsequent interim hearings conducted in 2003, 2006, and 2008 resulted in no change to his 15-year reconsideration hearing date. The two most recent decisions were affirmed on appeal by the National Appeals Board.

On December 11, 2009, Johnson filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition is presently before the court on the respondent's motion to dismiss. The motion has been fully briefed and is ripe for review.

## Discussion

Liberally construed, Johnson's petition raises the following claims: (1) that he was unlawfully transferred into the federal prison system; (2) that he is not properly subject to the jurisdiction of the United States Parole Commission; (3) that the Parole Commission has violated his rights to due process and equal protection, and the Ex Post Facto Clause, by applying the federal parole regulations to him; and (4) that he has been denied due process in his attempts to obtain clemency. For the following reasons, the court concludes that each of Johnson's claims is without merit.

### I. Johnson was lawfully transferred into the custody of the Bureau of Prisons and is properly subject to the jurisdiction of the United States Parole Commission.

As previously noted, Johnson was transferred into the federal prison system pursuant to a 1994 memorandum of agreement between the Department of the Army and the BOP. Under the terms of that agreement, the BOP promised to accept and permanently maintain up to 500 military

prisoners in the custody of the Department of the Army. While the Secretaries of the respective Services retain clemency authority for military prisoners housed in federal prisons, the agreement states that "[p]arole approval for military prisoners in [the] custody of the FBOP rests with the U.S. Parole Commission." Respondent's Ex. 3 at pg. 3; see also Army Reg. 15-130 § 3-1(e)(9) ("Prisoners transferred to Federal facilities are under the control of the U.S. Parole Commission, unless otherwise designated in writing. As such Federal and Commission policies and procedures apply, not those of this regulation.").

Contrary to Johnson's assertions, the memorandum of agreement between the Department of the Army and the BOP is grounded in federal statutory law, namely 10 U.S.C. § 858(a). That statute, enacted in 1956, specifically authorizes military prisoners to be transferred to the federal prison system:

> Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States . . . .

10 U.S.C. § 858(a) (emphasis added). The statute further provides that military prisoners transferred into federal custody must be treated the same as non-military prisoners incarcerated in the same facility:

> Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated.

Id.

Courts interpreting § 858(a) have consistently held that military prisoners transferred to federal custody are subject to the same federal laws and regulations governing federal civilian

prisoners, including the federal parole provisions, and that they are properly subject to the jurisdiction of the United States Parole Commission. See, e.g., Stewart v. United States Bd. of Parole, 285 F.2d 421, 421-422 (10th Cir. 1960) ("It has been consistently held that a military prisoner who is committed to the service of his sentence in a federal penitentiary automatically becomes entitled to any advantages and subject to any disadvantages which accrue to the civilian prisoner.") (internal citations and quotation marks omitted); Bates v. Wilkinson, 267 F.2d 779, 780 (5th Cir. 1959) ("It has long been established that military prisoners may properly be confined in federal institutions and when so confined are subject to all laws pertaining to federal prisoners to the same extent as though the conviction had been by civil court, even though the system of parole . . . [is] different for prisoners confined in disciplinary barracks."); Roberts v. United States Dep't of Navy, 1992 U.S. App. LEXIS 6970, at *5-6 (10th Cir. Apr. 13, 1992) ("In challenges similar to Petitioner's the language of 10 U.S.C. § 858(a) has been held to express the intent of Congress to apply the federal parole statutes and the jurisdiction of the United States Parole Board, and later the United States Parole Commission, over military prisoners in the custody of the federal Bureau of Prisons.").

Johnson alternatively argues that the memorandum of agreement is "void due to the abolishment of the federal parole system by the Sentencing Reform Act" of 1974. This argument, however, is also without merit. The Sentencing Reform Act, which abolished parole for federal offenses committed after November 1, 1987, excluded from its application offenses committed in violation of the Uniform Code of Military Justice. Codified as amended at 18 U.S.C. §§ 3551-3742, the Act specifically provides as follows:

> Except as otherwise provided, a defendant who has been found guilty of an offense described in any Federal Statute, including section 13 and 1153 of

> this title, <u>other than</u> an Act of Congress applicable exclusively in the District of Columbia or <u>the Uniform Code of Military Justice</u>, shall be sentenced in accordance with the provisions of this chapter . . . .

18 U.S.C. § 3551 (emphasis added).

Moreover, while the Sentencing Reform Act provided that the United States Parole Commission would eventually be phased out, the Commission has yet to be abolished. As the United States Court of Appeals for the Third Circuit recently explained in <u>Hackley v. Bledsoe</u>, 350 F. App'x 599 (3d Cir. 2009):

> [The Sentencing Reform Act] abolished the Parole Commission and repealed federal parole statutes, but § 235 [of the Act] provided a savings provision to keep the Commission and parole statutes in effect for a period of transition to the new system. These transition sections apply to offenses committed before the Act's effective date . . . . [S]ince its original enactment, section 235(b)(3) has been continually amended to extend the five year savings provision for the Commission and parole statutes, and the Parole Commission and parole statutes are currently set to expire on October 31, 2011, <u>see</u> Pub. L. No. 110-312, § 2, 122 Stat. 3013 (August 12, 2008) (extending savings provision by 24 years after effective date of Sentencing Reform Act).

<u>Hackley</u>, 350 F. App'x at 601.

Based on the foregoing, the court concludes that Johnson was lawfully transferred into the custody of the Bureau of Prisons, and that he is properly subject to the jurisdiction of the United States Parole Commission.

## II. **Johnson has failed to establish a violation of his constitutional rights.**

### A. **Due process claims**

As previously summarized, Johnson's petition includes several constitutional claims. He first argues that his due process rights have been violated as a result of being subject to the federal parole regulations, rather than the procedures of the military parole scheme. In addition, Johnson claims

that he has been denied due process in his attempts to obtain clemency, since the Air Force Clemency and Parole Board has reviewed his case "in absentia."[4] For the following reasons, the court concludes that both claims are without merit.

"In order to advance a due process claim, [a petitioner] must first establish that he had a property or liberty interest at stake." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002). Johnson cannot meet this initial burden, because he has no protected interest in clemency or parole. Department of Defense Instruction 1325.7 specifically states that "there is no right to clemency, parole, reenlistment, or restoration." Dep't of Defense Instr. 1325.7, § 6.16.2. Consequently, Johnson has "no constitutional right to a clemency hearing." Woratzeck v. Stewart, 118 F.3d 648, 653 (9th Cir. 1997); see also Air Force Instr. 31-205, § 10.8.6 (emphasizing that clemency proceedings before the AFCP&B are not open to the public and that the Board does not permit personal appearances by or on behalf of inmates). Likewise, given the absence of any protected interest in being released on parole, "[Johnson] does not have any procedural due process rights under [the military parole] system." Artis v. United States Dep't of Justice, 166 F. Supp. 2d 126, 130 (D. N.J. 2001); see also Seay v. O'Brien, 2010 U.S. Dist. LEXIS 21474, at *24 (W.D. Va. Mar. 9, 2010) (Turk, J.) (holding that a military prisoner had "suffered no due process violation" as a result of being subject to the jurisdiction of the United States Parole Commission, since the

---

[4] The Air Force Clemency and Parole Board (AFC&PB) is the primary agency responsible for reviewing clemency cases for Air Force prisoners, including those housed in BOP facilities pursuant to the memorandum of agreement between the Department of the Army and the BOP. The policies, procedures, and functions of the AFC&PB are described in Air Force Instruction 31-205. The regulation lists criteria that may be considered in determining whether to grant a request for clemency, and describes the process by which clemency petitions are to be reviewed. For Air Force prisoners like Johnson, who are subject to a term of confinement of 30 years or more, clemency consideration occurs "annually beginning 5 years from the date of confinement." Air Force Instr. 31-205, § 10.10.4. The record reveals that Johnson's most recent request for clemency was denied by the AFC&PB on August 13, 2009.

petitioner did "not have a liberty interest in parole"). For these reasons, Johnson's due process claims must be dismissed.

### B. Ex post facto claim

Johnson also asserts a claim under the Ex Post Facto Clause of the United States Constitution, based on the frequency of the hearings he receives before the United States Parole Commission now that he is in the custody of the BOP. Specifically, Johnson complains that the application of the federal parole regulations, which provide for a 15-year reconsideration hearing and biennial interim hearings, results in an ex post facto violation, since he would have received annual parole hearings if he had remained in the Disciplinary Barracks. For the following reasons, the court concludes that this claim is also without merit.

The United States Constitution prohibits federal and state governments from enacting any ex post facto law. U.S. Const. art. I, § 9, cl. 3; Id. art. I, § 10, cl. 1. An ex post facto law is one which "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). "To fall within the ex post facto prohibition, a law must be retrospective -- that is, it must apply to events occurring before its enactment -- and it must disadvantage the offender affected by it." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal citations and quotations omitted). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." Weaver v. Graham, 450 U.S. 24, 31 (1981).

In this case, the petitioner's ex post facto argument fails for two reasons. First, there has been no retroactive application of federal law. Section 858(a) of Title 10, which authorized Johnson's transfer to federal civilian custody, and which requires that transferred military prisoners be "subject

to the same discipline and treatment" as other civilian prisoners, predates Johnson's criminal conduct by nearly thirty years. Likewise, the hearing schedule contained in the federal parole regulations was in effect at the time Johnson committed his offense. See Artis, 166 F. Supp. 2d at 133. Consequently, "the application of this provision to Petitioner is not retroactive." Id. (holding that the decrease in the frequency of parole hearings which resulted from the petitioner's transfer from military custody to federal custody did not constitute an ex post facto violation); see also Romey v. Vanyur, 9 F. Supp. 2d 565, 572 (E.D. N.C. 1998), aff'd, 168 F.3d 483 (4th Cir. 1999) (rejecting the military inmate's ex post facto claim, and emphasizing that the inmate "had no expectation at the time of his conviction or sentencing that he would be subject to a particular parole system," and that "[t]he possibility existed that he would be placed in BOP custody, where Parole Commission rules apply").

Moreover, it is well-settled that a law which changes the frequency of parole hearings does not violate the Ex Post Facto Clause where it "creates only the most speculative and attenuated possibility of producing the effect of increasing the measure of punishment for covered crimes." California Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995). Here, Johnson's claim that he has been disadvantaged as a result of the decreased frequency of parole hearings is clearly speculative at best. The Parole Commission, after considering the severity of Johnson's offense, decided that he would not be suitable for parole until he had served fifteen additional years in custody. "Under these circumstances, where there is no reasonable probability that [Johnson] will be deemed suitable for parole at any point substantially before his fifteen year reconsideration date, he has not been prejudiced." Artis, 166 F. Supp. 2d at 133; see also Romey, 9 F. Supp. 2d at 572 (noting, in rejecting the military inmate's ex post facto claim, that it was "unclear that [any] delay in a parole hearing

constitutes punishment at all"). For these reasons, Johnson's ex post facto claim must also be dismissed.

### C. Equal protection claim

In addition to the foregoing claims, Johnson asserts an equal protection challenge. Specifically, Johnson contends that the Parole Commission, by applying the federal parole regulations rather than the applicable military parole rules, has caused him to receive fewer parole hearings and, thus, less favorable treatment, than military inmates housed in military correctional facilities.

The Due Process Clause of the Fifth Amendment, which is applicable to the federal government, has been interpreted to include an "implied equal protection guarantee." FCC v. Beach Communications, 508 U.S. 307, 312 (1993). To prevail on an equal protection claim, however, the petitioner "'must first demonstrate that [he has] been treated differently from others with whom [he is] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney v. Wyche, 293 F.3d 726, 730-731 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). For the following reasons, the court agrees with the respondent that Johnson's claim fails at the first step.

Although Johnson is being treated differently than military inmates housed in military correctional facilities, he has failed to demonstrate that he is similarly situated to such inmates for purposes of equal protection analysis. As the Court explained in Koyce v. United States Bd. of Parole, 306 F.2d at 762:

> He is not within a class of persons convicted by court-martial who remain confined under military authority. In determining whether he is being denied equal protection of the laws[,] the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which

> he was subject. There is no unconstitutional discrimination or other denial of due process because of the recognition by Congress that it is desirable and feasible for persons confined in such institutions as [the United States Penitentiary in Lewisburg, Pennsylvania] to be subject to certain specified and salutary parole conditions, notwithstanding like provisions have not been deemed desirable or feasible for those who serve their sentences in a military prison . . . .

Koyce, 306 F.2d at 762.

Applying Koyce in Moss v. Clark, 886 F.2d 686 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit held that the District of Columbia's Good Time Credits Act, which created a distinction between D.C. Code offenders confined in D.C. prisons, and D.C. Code offenders housed in federal correctional facilities, did not give rise to an equal protection violation, since the two groups were not similarly situated:

> District of Columbia prisoners do not become similarly situated to prisoners in federal facilities with regard to parole eligibility simply because both were sentenced in the District of Columbia Superior Court under the District of Columbia Code. After sentencing, all individuals are remanded to the authority of the Attorney General who determines the location of their incarceration. Thereafter, for purposes of imprisonment or parole, "the class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject."

Moss, 886 F.2d at 691 (quoting Koyce, supra).

The Fourth Circuit reached a similar conclusion in Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). After the plaintiff was convicted and sentenced to a prison term by the Circuit Court for the City of Portsmouth, he was committed to the Portsmouth City Jail pending an unrelated trial in another court. He alleged that differing conditions in the local jail violated his equal protection rights. The Fourth Circuit declined to allow the plaintiff to pursue an equal protection claim, however, since, inter alia, the plaintiff failed to demonstrate that he was similarly situated to state inmates housed in state facilities:

> Absent a right to have been housed in a state facility during the time he was confined at Portsmouth, a right that Strickler did not and almost surely could not allege . . . , he was not similarly situated for equal protection purposes with state prisoners in state facilities, and therefore his claim necessarily would have failed.

Strickler, 989 F.2d at 1389.

The court finds the foregoing principles to be controlling in this case. Simply stated, Johnson has no federal right to be confined in a military correctional facility as opposed to a federal prison. See 10 U.S.C. § 858, supra; see also 18 U.S.C. § 4083 ("Persons convicted of offenses against the United States or by courts-martial punishable by imprisonment for more than one year may be confined in any United States penitentiary."). Consequently, he is not similarly situated, for purposes of equal protection analysis, to military inmates who remain in the custody of military correctional institutions. Accordingly, Johnson's equal protection claim is also subject to dismissal.

## Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

ENTER: This 23rd day of July, 2010.

_____
Chief United States District Judge